**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff*, v. HYUNDAI OILBANK CO., LTD. 182, Pyeongsin 2-ro Daesan-eup, Seosan-si, Chungcheongnam-do South Korea and S-OIL CORPORATION 192, Baekbeom-ro, Mapo-gu Seoul, South Korea, *Defendants*. | CASE NO. 2:19-cv-1037 COMPLAINT: VIOLATION OF SECTION 1 OF THE SHERMAN ACT, 15 U.S.C. § 1 |

## COMPLAINT

The United States of America, acting under the direction of the Attorney General of the United States, brings this civil antitrust action to obtain equitable monetary relief and recover damages from Hyundai Oilbank Co., Ltd. and S-Oil Corporation for conspiring to rig bids and fix prices, in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1, on the supply of fuel to the U.S. military for its operations in South Korea.

### I. INTRODUCTION

1. Since the end of the Korean War, the U.S. armed forces have maintained a significant presence in South Korea, protecting American interests in the region and safeguarding peace for the Korean people. To perform this important mission, American service members

depend on fuel to power their bases and military vehicles. The U.S. military procures this fuel from oil refiners located in South Korea through a competitive bidding process.

2. For at least a decade, rather than engage in fair and honest competition, Defendants and their co-conspirators defrauded the U.S. military by fixing prices and rigging bids for the contracts to supply this fuel. Defendants met and communicated in secret with other large South Korean oil refiners and logistics companies, and pre-determined which conspirator would win each contract. Defendants or their co-conspirators then fraudulently submitted collusive bids to the U.S. military. Through this scheme, Defendants reaped vastly higher profit margins on the fuel they supplied to the U.S. military than on the fuel they sold to the South Korean military and to private parties.

3. As a result of this conduct, Defendants and their co-conspirators illegally overcharged American taxpayers by well over $100 million. This conspiracy unreasonably restrained trade and commerce, in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1. Defendants have agreed to plead guilty to one count of a superseding indictment charging a criminal violation of Section 1 of the Sherman Act for this unlawful conduct, and in this civil action, the United States seeks compensation for the injuries it incurred as a result of this conspiracy.

## II. DEFENDANTS

4. Hyundai Oilbank Co., Ltd. ("Hyundai Oilbank") is an oil company headquartered in Seosan, South Korea. Hyundai Oilbank refines and supplies gasoline, diesel, kerosene, and other petroleum products for sale internationally. During the conspiracy, Hyundai Oilbank partnered with a logistics firm ("Company A") to supply fuel to U.S. military installations in South Korea, with Company A acting as the prime contractor under the relevant contracts.

5. S-Oil Corporation ("S-Oil") is an oil company headquartered in Seoul, South Korea. S-Oil refines and supplies gasoline, diesel, kerosene, and other petroleum products for sale internationally. Beginning in 2009, S-Oil partnered with Hanjin Transportation Co., Ltd. ("Hanjin") to supply fuel to U.S. military installations in South Korea, with Hanjin acting as the prime contractor under the relevant contracts.

6. Other persons, not named as defendants in this action, participated as co-conspirators in the offense alleged in this Complaint and performed acts and made statements in furtherance thereof. These co-conspirators include, among others, GS Caltex Corporation ("GS Caltex"), Hanjin, SK Energy Co., Ltd. ("SK Energy"), and Company A.

7. Whenever this Complaint refers to any act, deed, or transaction of any business entity, it means that the business entity engaged in the act, deed, or transaction by or through its officers, directors, employees, agents, or other representatives while they were actively engaged in the management, direction, control, or transaction of its business or affairs.

## III. JURISDICTION AND VENUE

8. The United States brings this action under Section 4 of the Sherman Act, 15 U.S.C. § 4, and Section 4A of the Clayton Act, 15 U.S.C. § 15a, seeking equitable relief, including equitable monetary remedies, and damages from Defendants' violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.

9. This Court has subject matter jurisdiction over this action under 15 U.S.C. §§ 4 and 15a and 28 U.S.C. §§ 1331 and 1337.

10. Defendants have consented to venue and personal jurisdiction in this district for the purpose of this Complaint.

11. Defendants or their co-conspirators entered into contracts with the U.S. military to supply and deliver fuel to U.S. military installations in South Korea.  Under the terms of these contracts, Defendants or their co-conspirators agreed that the laws of the United States would govern all contractual disputes and that U.S. administrative bodies and courts would have exclusive jurisdiction to resolve all such disputes.  To be eligible to enter into these contracts, Defendants or their co-conspirators registered in databases located in the United States.  For certain contracts, Defendants or their co-conspirators submitted bids to U.S. Department of Defense offices in the United States.  After being awarded these contracts, Defendants or their co-conspirators submitted invoices to and received payments from U.S. Department of Defense offices in Columbus, Ohio, which included use of wires and mails located in the United States.

12. Through these contracts with the U.S. military, Defendants' activities had a direct, substantial, and reasonably foreseeable effect on interstate commerce, import trade or commerce, and commerce with foreign nations.  Defendants' conspiracy had a substantial and intended effect in the United States.  Defendants caused U.S. Department of Defense agencies to pay non-competitive prices for the supply of fuel to U.S. military installations.  Defendants or their co-conspirators also caused a U.S. Department of Defense agency located in the Southern District of Ohio to transfer U.S. dollars to their foreign bank accounts.

### IV.  BACKGROUND

13. From at least March 2005 and continuing until at least October 2016 ("the Relevant Period"), the U.S. military procured fuel for its installations in South Korea through competitive solicitation processes.  Oil companies, either independently or in conjunction with a logistics company, submitted bids in response to these solicitations.

14. The conduct at issue relates to two types of contracts to supply fuel to the U.S. military for use in South Korea: Post, Camps, and Stations ("PC&S") contracts and Army and Air Force Exchange Services ("AAFES") contracts.

15. PC&S contracts are issued and administered by the Defense Logistics Agency ("DLA"), a combat support agency in the U.S. Department of Defense. DLA, formerly known as the Defense Energy Support Center, is headquartered in Fort Belvoir, Virginia. The fuel procured under PC&S contracts is used for military vehicles and to heat U.S. military buildings. During the Relevant Period, PC&S contracts ran for a term of three or four years. DLA issued PC&S solicitations listing the fuel requirements for installations across South Korea, with each delivery location identified by a separate line item. Bidders offered a price for each line item on which they chose to bid. DLA awarded contracts to the bidders offering the lowest price for each line item. The Defense Finance and Accounting Service ("DFAS"), a finance and accounting agency of the U.S. Department of Defense, wired payments to the PC&S contract awardees from its office in Columbus, Ohio.

16. AAFES is an agency of the Department of Defense headquartered in Dallas, Texas. AAFES operates official retail stores (known as "exchanges") on U.S. Army and Air Force installations worldwide, which U.S. military personnel and their families use to purchase everyday goods and services, including gasoline for use in their personal vehicles. AAFES procures fuel for these stores via contracts awarded through a competitive solicitation process. The term of AAFES contracts is typically two years, but may be extended for additional years. In 2008, AAFES issued a solicitation that listed the fuel requirements for installations in South Korea. Unlike DLA, AAFES awarded the entire 2008 contract to the bidder offering the lowest price across all the listed locations.

## V.  DEFENDANTS' UNLAWFUL CONDUCT

17. From at least March 2005 and continuing until at least October 2016, Defendants and their co-conspirators engaged in a series of meetings, telephone conversations, e-mails, and other communications to rig bids and fix prices for the supply of fuel to U.S. military installations in South Korea.

*2006 PC&S and 2008 AAFES Contracts*

18. GS Caltex, SK Energy, Hyundai Oilbank, and Company A conspired to rig bids and fix prices on the 2006 PC&S contracts, which were issued in response to solicitation SP0600-05-R-0063, supplemental solicitation SP0600-05-0063-0001, and their amendments. The term of the 2006 PC&S contracts covered the supply of fuel from February 2006 through July 2009.

19. Between early 2005 and mid-2006, GS Caltex, SK Energy, Hyundai Oilbank, and other conspirators met multiple times and exchanged phone calls and e-mails to allocate the line items in the solicitations for the 2006 PC&S contracts.  For each line item allocated to a different co-conspirator, the other conspirators agreed not to bid or to bid high enough to ensure that they would not win that item.  Through these communications, these conspirators agreed to inflate their bids to produce higher profit margins.  DLA awarded the 2006 PC&S line items according to the allocations made by the conspiracy.

20. As part of their discussions related to the 2006 PC&S contracts, GS Caltex, Hyundai Oilbank, and other conspirators agreed not to compete with SK Energy in bidding for the 2008 AAFES contract.  In 2008, GS Caltex, Hyundai Oilbank, and other conspirators honored their agreement:  GS Caltex bid significantly above the bid submitted by SK Energy for the AAFES contract, while Hyundai Oilbank and Company A declined to bid even after AAFES explicitly requested their participation in the bidding.  The initial term of the 2008 AAFES

contract ran from July 2008 to July 2010; the contract was later extended through July 2013. As envisioned by the conspiracy, AAFES awarded the 2008 contract to SK Energy.

*2009 PC&S Contracts*

21. Continuing their conspiracy, Defendants and other co-conspirators conspired to rig bids and fix prices for the 2009 PC&S contracts, which were issued in response to solicitation SP0600-08-R-0233. Hanjin and S-Oil joined the conspiracy for the purpose of bidding on the solicitation for the 2009 PC&S contracts. Hanjin and S-Oil partnered to bid jointly on the 2009 PC&S contracts, with S-Oil providing the fuel and Hanjin providing transportation and logistics. The term of the 2009 PC&S contracts covered the supply of fuel from October 2009 through August 2013.

22. Between late 2008 and mid-2009, Defendants and other co-conspirators met multiple times and exchanged phone calls and e-mails to allocate the line items in the solicitation for the 2009 PC&S contracts. As in 2006, these conspirators agreed to bid high so as to not win line items allocated to other co-conspirators. The original conspirators agreed to allocate to Hanjin and S-Oil certain line items that had previously been allocated to the original conspirators.

23. With one exception, DLA awarded the 2009 PC&S contracts in line with the allocations made by the Defendants and other co-conspirators. Hyundai Oilbank and Company A accidentally won one line item that the conspiracy had allocated to GS Caltex. To remedy this misallocation, Company A, Hyundai Oilbank, and GS Caltex agreed that GS Caltex, rather than Hyundai Oilbank, would supply Company A with the fuel procured under this line item.

*2013 PC&S Contracts*

24. Similar to 2006 and 2009, Defendants and other co-conspirators conspired to rig bids and fix prices for the 2013 PC&S contracts, which were issued in response to solicitation SP0600-12-R-0332. The term of the 2013 PC&S Contract covered the supply of fuel from August 2013 through July 2016.

25. Defendants and other co-conspirators communicated via phone calls and e-mails to allocate and set the price for each line item in the solicitation for the 2013 PC&S contracts. Defendants and other co-conspirators believed that they had an agreement as to their bidding strategy and pricing for the 2013 PC&S contracts. As a result of this agreement, they bid higher prices than they would have in a competitive process.

26. However, Hanjin and S-Oil submitted bids for the 2013 PC&S contracts below the prices set by the other co-conspirators. Although lower than the pricing agreed upon by the conspirators, Hanjin and S-Oil still submitted bids above a competitive, non-collusive price, knowing that they would likely win the contracts because the other conspirators would bid even higher prices.

27. As a result of their bidding strategy, Hanjin and S-Oil jointly won nearly all the line items in the 2013 PC&S contracts. As in 2009, S-Oil was to provide the fuel for these line items, and Hanjin was to provide transportation and logistics. GS Caltex and other co-conspirators won a few, small line items; SK Energy won none. DLA made inflated payments under the 2013 PC&S contracts through October 2016.

28. After the award of the 2013 PC&S contracts, Hanjin, S-Oil, and GS Caltex reached an understanding that GS Caltex, rather than S-Oil, would supply Hanjin with fuel for certain line items. Under this side agreement, Hanjin paid a much lower price to GS Caltex for

fuel than the price it previously had agreed to pay S-Oil to acquire fuel for those line items. However, the price that Hanjin paid to GS Caltex exceeded a competitive price for fuel.

## VI.  VIOLATIONS ALLEGED

29. The United States incorporates by reference the allegations in paragraphs 1 through 28.

30. The conduct of Defendants and their co-conspirators unreasonably restrained trade and harmed competition for the supply of fuel to the U.S. military in South Korea in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.

31. The United States was injured as a result of the unlawful conduct because it paid more for the supply of fuel than it would have had the Defendants and their co-conspirators engaged in fair competition.

## VII.  REQUEST FOR RELIEF

32. The United States requests that this Court:

   (a) adjudge that Defendants' and their co-conspirators' conduct constitutes an unreasonable restraint of interstate commerce, import trade or commerce, and commerce with foreign nations in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1;

   (b) award the United States damages to which it is entitled for the losses incurred as the result of Defendants' and their co-conspirators' conduct;

   (c) award the United States equitable disgorgement of the ill-gotten gains obtained by Defendants;

   (d) award the United States its costs of this action; and

   (e) award the United States other relief that the Court deems just and proper.

Dated: March 20, 2019

Respectfully submitted,

**FOR PLAINTIFF UNITED STATES OF AMERICA:**

_____
Makan Delrahim
Assistant Attorney General for Antitrust

_____
Andrew C. Finch
Principal Deputy Assistant Attorney
General

_____
Bernard A. Nigro Jr.
Deputy Assistant Attorney General

_____
Patricia A. Brink
Director of Civil Enforcement

_____
Kathleen S. O'Neill
Chief
Transportation, Energy &
 Agriculture Section

_____
Robert A. Lepore
Assistant Chief
Transportation, Energy &
 Agriculture Section

_____
J. Richard Doidge
Julie Elmer
Jeremy Evans
John A. Holler
Jonathan Silberman
Patrick M. Kuhlmann
Attorneys for the United States

U.S. Department of Justice
Antitrust Division
450 5th Street, NW, Suite 8000
Washington, DC 20530
Tel.: (202) 514-8944
Fax: (202) 616-2441
E-mail: Dick.Doidge@usdoj.gov

Dated: March 20, 2019

Respectfully submitted,

**FOR PLAINTIFF UNITED STATES OF AMERICA**

BENJAMIN C. GLASSMAN
United States Attorney

By:

_____
Andrew M. Málek (Ohio Bar #0061442)
Assistant United States Attorney
303 Marconi Boulevard, Suite 200
Columbus, Ohio 43215
Tel: (614) 469-5715
Fax: (614) 469-2769
E-mail: Andrew.Malek@usdoj.gov

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
United States of America

## DEFENDANTS
Hyundai Oilbank Co., Ltd.; S-Oil Corporation

**(b)** County of Residence of First Listed Plaintiff _____
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant: South Korea
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Andrew M. Malek, U.S. Attorney's Office, 303 Marconi Boulevard, Suite 200, Columbus, Ohio 43215, (614) 469-5715

Attorneys *(If Known)*
See attachment

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [X] 1 U.S. Government Plaintiff
- [ ] 2 U.S. Government Defendant
- [ ] 3 Federal Question *(U.S. Government Not a Party)*
- [ ] 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)* *(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | | **PROPERTY RIGHTS** | [X] 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | **PERSONAL PROPERTY** | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| | | | ☐ 790 Other Labor Litigation | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| | | | ☐ 791 Employee Retirement Income Security Act | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | | |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- [X] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
15 U.S.C. § 1

Brief description of cause:
Bid rigging conspiracy

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

DEMAND $ _____

CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE: Algenon L. Marbley
DOCKET NUMBER: See attachment

DATE: 03/20/2019
SIGNATURE OF ATTORNEY OF RECORD: s/Andrew M. Malek

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

CIVIL COVER SHEET ATTACHMENT

I.(c).   Attorneys

Defendants

For Hyundai Oilbank Co., Ltd.
Kathryn M. Hellings
Hogan Lovells US LLP
555 Thirteenth Street, NW
Washington, DC 20004
Tel: (202) 637-5483
Fax: (202) 637-5910
E-mail: kathryn.hellings@hoganlovells.com

For S-Oil Corporation
Sonia K. Pfaffenroth
Arnold & Porter Kaye Scholer LLP
601 Massachusetts Avenue, NW
Washington, DC 20001
Tel: (202) 942-6831
Fax: (202) 942-5999
E-mail: sonia.pfaffenroth@arnoldporter.com


VIII.   Related Cases

1) Docket No. 2:18-cv-1456
2) Filed under seal