**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| *Plaintiff,* | |
| | CASE NO. 2:19-cv-1037 |
| v. | |
| HYUNDAI OILBANK CO., LTD., | JUDGE MARBLEY |
| | MAGISTRATE JUDGE VASCURA |
| *Defendant.* | |

## FINAL JUDGMENT AS TO DEFENDANT HYUNDAI OILBANK CO., LTD.

WHEREAS Plaintiff, United States of America, filed its Complaint on March 20, 2019, the United States and Defendant Hyundai Oilbank Co., Ltd. ("Hyundai Oilbank"), by their respective attorneys, have consented to the entry of this Final Judgment without trial or adjudication of any issue of fact or law;

WHEREAS, on such date as may be determined by the Court, Hyundai Oilbank will plead guilty pursuant to Fed. R. Crim. P. 11(c)(1)(C) (the "Plea Agreement") to Count One of a Superseding Indictment filed in the Southern District of Ohio (the "Criminal Action") that alleges a violation of Section 1 of the Sherman Act, 15 U.S.C. § 1, relating to the same events giving rise to the allegations described in the Complaint;

WHEREAS, this Final Judgment does not constitute any evidence against or admission by any party regarding any issue of fact or law;

NOW, THEREFORE, before the taking of any testimony and without trial or final adjudication of any issue of fact or law herein, and upon consent of the parties hereto, it is hereby ORDERED, ADJUDGED, AND DECREED:

1

## I.    JURISDICTION

This Court has jurisdiction of the subject matter of this action and each of the parties consenting hereto.  The Complaint states a claim upon which relief may be granted to the United States against Hyundai Oilbank under Section 1 of the Sherman Act, 15 U.S.C. §1.

## II.    APPLICABILITY

This Final Judgment applies to Hyundai Oilbank, as defined above, and all other persons in active concert or participation with any of them who receive actual notice of this Final Judgment by personal service or otherwise.

## III.    PAYMENT

Hyundai Oilbank shall pay to the United States within ten (10) business days of the entry of this Final Judgment the amount of thirty-nine million, one hundred thousand dollars ($39,100,000), less the amount paid (excluding any interest) pursuant to the settlement agreement attached hereto as Attachment 1, to satisfy all civil antitrust claims alleged against Hyundai Oilbank by the United States in the Complaint.  Payment of the amount ordered hereby shall be made by wire transfer of funds or cashier's check.  If the payment is made by wire transfer, Hyundai Oilbank shall contact Janie Ingalls of the Antitrust Division's Antitrust Documents Group at (202) 514-2481 for instructions before making the transfer.  If the payment is made by cashier's check, the check shall be made payable to the United States Department of Justice and delivered to: Janie Ingalls, United States Department of Justice Antitrust Division, Antitrust Documents Group, 450 5th Street, NW, Suite 1024, Washington, D.C. 20530.  In the event of a default in payment, interest at the rate of eighteen (18) percent per annum shall accrue thereon from the date of default to the date of payment.

## IV.    COOPERATION

Hyundai Oilbank shall cooperate fully with the United States regarding any matter about which Hyundai Oilbank has knowledge or information relating to any ongoing civil investigation, litigation, or other proceeding arising out of any ongoing federal investigation of the subject matter discussed in the Complaint (hereinafter, any such investigation, litigation, or proceeding shall be referred to as a "Civil Federal Proceeding").

The United States agrees that any cooperation provided in connection with the Plea Agreement and/or pursuant to the settlement agreement attached hereto as Attachment 1 will be considered cooperation for purposes of this Final Judgment, and the United States will use its reasonable best efforts, where appropriate, to coordinate any requests for cooperation in connection with the Civil Federal Proceeding with requests for cooperation in connection with the Plea Agreement and the settlement agreement attached hereto as Attachment 1, so as to avoid unnecessary duplication and expense.

Hyundai Oilbank's cooperation shall include, but not be limited to, the following:

(a) Upon request, completely and truthfully disclosing and producing, to the offices of the United States and at no expense to the United States, copies of all non-privileged information, documents, materials, and records in its possession (and for any foreign-language information, documents, materials, or records, copies must be produced with an English translation), regardless of their geographic location, about which the United States may inquire in connection with any Civil Federal Proceeding, including but not limited to all information about activities of Hyundai Oilbank and present and former officers, directors, employees, and agents of Hyundai Oilbank;

(b) Making available in the United States, at no expense to the United States, its present officers, directors, employees, and agents to provide information and/or testimony as

3

requested by the United States in connection with any Civil Federal Proceeding, including the provision of testimony in trial and other judicial proceedings, as well as interviews with law enforcement authorities, consistent with the rights and privileges of those individuals;

(c) Using its best efforts to make available in the United States, at no expense to the United States, its former officers, directors, employees, and agents to provide information and/or testimony as requested by the United States in connection with any Civil Federal Proceeding, including the provision of testimony in trial and other judicial proceedings, as well as interviews with law enforcement authorities, consistent with the rights and privileges of those individuals;

(d) Providing testimony or information necessary to identify or establish the original location, authenticity, or other basis for admission into evidence of documents or physical evidence produced by Hyundai Oilbank in any Civil Federal Proceeding as requested by the United States; and

(e) Completely and truthfully responding to all other inquiries of the United States in connection with any Civil Federal Proceeding.

However, notwithstanding any provision of this Final Judgment, Hyundai Oilbank is not required to: (1) request of its current or former officers, directors, employees, or agents that they forgo seeking the advice of an attorney nor that they act contrary to that advice; (2) take any action against its officers, directors, employees, or agents for following their attorney's advice; or (3) waive any claim of privilege or work product protection.

The obligations of Hyundai Oilbank to cooperate fully with the United States as described in this Section shall cease upon the conclusion of all Civil Federal Proceedings (which

4

may include Civil Federal Proceedings related to the conduct of third parties), including exhaustion of all appeals or expiration of time for all appeals of any Court ruling in each such Civil Federal Proceeding, at which point the United States will provide written notice to Hyundai Oilbank that its obligations under this Section have expired.

## V. ANTITRUST COMPLIANCE PROGRAM

A.      Within thirty (30) days after entry of this Final Judgment, Hyundai Oilbank shall appoint an Antitrust Compliance Officer and identify to the United States his or her name, business address, telephone number, and email address. Within forty-five (45) days of a vacancy in the Antitrust Compliance Officer position, Hyundai Oilbank shall appoint a replacement, and shall identify to the United States the Antitrust Compliance Officer's name, business address, telephone number, and email address. Hyundai Oilbank's initial or replacement appointment of an Antitrust Compliance Officer is subject to the approval of the United States, in its sole discretion.

B.      The Antitrust Compliance Officer shall institute an antitrust compliance program for the company's employees and directors with responsibility for bidding for any contract with the United States. The antitrust compliance program shall provide at least two hours of training annually on the antitrust laws of the United States, such training to be delivered by an attorney with relevant experience in the field of United States antitrust law.

C.      Each Antitrust Compliance Officer shall obtain, within six months after entry of this Final Judgment, and on an annual basis thereafter, on or before each anniversary of the entry of this Final Judgment, from each person subject to Paragraph V.B of this Final Judgment, and thereafter maintaining, a certification that each such person has received the required two hours of annual antitrust training.

D.    Each Antitrust Compliance Officer shall communicate annually to all employees that they may disclose to the Antitrust Compliance Officer, without reprisal, information concerning any potential violation of the United States antitrust laws.

E.    Each Antitrust Compliance Offer shall provide to the United States within six months after entry of this Final Judgment, and on an annual basis thereafter, on or before each anniversary of the entry of this Final Judgment, a written statement as to the fact and manner of Hyundai Oilbank's compliance with Section V of this Final Judgment.

## VI.    RETENTION OF JURISDICTION

This Court retains jurisdiction to enable any of the parties to this Final Judgment to apply to this Court at any time for further orders and directions as may be necessary or appropriate to carry out or construe this Final Judgment, to modify or terminate any of its provisions, to enforce compliance, and to punish violations of its provisions.

## VII.    ENFORCEMENT OF FINAL JUDGMENT

A.    The United States retains and reserves all rights to enforce the provisions of this Final Judgment, including the right to seek an order of contempt from the Court. Hyundai Oilbank agrees that in any civil contempt action, any motion to show cause, or any similar action brought by the United States regarding an alleged violation of this Final Judgment, the United States may establish a violation of the decree and the appropriateness of any remedy therefor by a preponderance of the evidence, and Hyundai Oilbank waives any argument that a different standard of proof should apply.

B.    The Final Judgment should be interpreted to give full effect to the procompetitive purposes of the antitrust laws and to restore all competition the United States alleged was harmed by the challenged conduct. Hyundai Oilbank agrees that they may be held in contempt of, and that the Court may enforce, any provision of this Final Judgment that, as interpreted by the Court

6

in light of these procompetitive principles and applying ordinary tools of interpretation, is stated

specifically and in reasonable detail, whether or not it is clear and unambiguous on its face. In

any such interpretation, the terms of this Final Judgment should not be construed against either

party as the drafter.

      C.    In any enforcement proceeding in which the Court finds that Hyundai Oilbank has

violated this Final Judgment, the United States may apply to the Court for a one-time extension

of this Final Judgment, together with such other relief as may be appropriate. In connection with

any successful effort by the United States to enforce this Final Judgment against Hyundai

Oilbank, whether litigated or resolved prior to litigation, Hyundai Oilbank agrees to reimburse

the United States for the fees and expenses of its attorneys, as well as any other costs including

experts' fees, incurred in connection with that enforcement effort, including in the investigation

of the potential violation.

## VIII.    EXPIRATION OF FINAL JUDGMENT

      Unless this Court grants an extension, this Final Judgment shall expire seven (7) years from

the date of its entry, except that after five (5) years from the date of its entry, this Final Judgment

may be terminated upon notice by the United States to the Court and Hyundai Oilbank that the

continuation of the Final Judgment no longer is necessary or in the public interest.

## IX.    PUBLIC INTEREST DETERMINATION

      Entry of this Final Judgment is in the public interest. The parties have complied with the

requirements of the Antitrust Procedures and Penalties Act, 15 U.S.C. § 16, including making

copies available to the public of this Final Judgment, the Competitive Impact Statement, and any

comments thereon and the United States' responses to comments.  Based upon the record before the Court, which includes the Competitive Impact Statement and any comments and response to comments filed with the Court, entry of this Final Judgment is in the public interest.

DATED: 7/11/19

UNITED STATES DISTRICT JUDGE

# ATTACHMENT 1

SETTLEMENT AGREEMENT

This Settlement Agreement ("Agreement") is entered into among the United States of America, acting through the Civil Division of the United States Department of Justice and the United States Attorney's Office for the Southern District of Ohio, on behalf of the Defense Logistics Agency ("DLA") and the Army and Air Force Exchange Service ("AAFES") (collectively the "United States"), Hyundai Oilbank Co., Ltd. ("Hyundai"), and Relator ▮▮▮▮▮▮▮ (hereafter collectively referred to as "the Parties"), through their authorized representatives.

RECITALS

A.     Hyundai is a South Korea-based energy company that produces various petroleum products that it sells to South Korean and international customers, including the United States Department of Defense ("DoD").

B.     On February 28, 2018, Relator, a resident and citizen of South Korea, filed a *qui tam* action in the United States District Court for the Southern District of Ohio captioned *United States ex rel.* ▮▮ *v. GS Caltex, et al.*, Civil Action No. ▮▮▮▮▮, pursuant to the *qui tam* provisions of the False Claims Act, 31 U.S.C. § 3730(b) (the "Civil FCA Action"). Relator contends that Hyundai conspired with other South Korean entities to rig bids on DoD contracts to supply fuel to U.S. military bases throughout South Korea beginning in 2005 and continuing until 2016, including DLA Post, Camps, and Stations ("PC&S") contracts executed in 2006, 2009, and 2013, and AAFES contracts executed in 2008.

C.     On such date as may be determined by the Court, Hyundai will plead guilty pursuant to Fed. R. Crim. P. 11(c)(1)(C) (the "Plea Agreement") to Count One of a Superseding Indictment filed in the Southern District of Ohio (the "Criminal Action") that alleges that Hyundai participated in a combination and conspiracy beginning at least in or around March 2005 and continuing until at least in or around October 2016, to suppress and eliminate competition on certain contracts solicited by the DoD to supply fuel to numerous U.S. Army, Navy, Marine, and Air Force installations in South Korea, including PC&S contracts and the 2008 AAFES contract, in violation of the Sherman Antitrust Act, 15 U.S.C. § 1.

D.     Hyundai will execute a Stipulation with the Antitrust Division of the United States Department of Justice in which Hyundai will consent to the entry of a Final Judgment to be filed in *United States v. Hyundai Oilbank Co., Ltd.*, Civil Action No. [to be assigned] (S.D. Ohio) (the "Civil Antitrust Action") that will settle any and all civil antitrust claims of the United States against Hyundai arising from any act or offense committed before the date of the Stipulation that was undertaken in furtherance of an attempted or completed antitrust conspiracy involving PC&S and/or AAFES fuel supply contracts with the U.S. military in South Korea during the period 2005 through 2016.

E.     The United States contends that it has certain civil claims against Hyundai arising from the conduct described in the Plea Agreement in the Criminal Action and in the Stipulation in the Civil Antitrust Action, as well as the conduct, actions, and claims alleged by Relator in the Civil FCA Action. The conduct referenced in this Paragraph is referred to below as the Covered Conduct.

F.     With the exception of any admissions that are made by Hyundai in connection with the Plea Agreement in the Criminal Action, this Settlement Agreement is

neither an admission of liability by Hyundai nor a concession by the United States that its claims are not well founded.

To avoid the delay, uncertainty, inconvenience, and expense of protracted litigation of the above claims, and in consideration of the mutual promises and obligations of this Settlement Agreement, the Parties agree and covenant as follows:

TERMS AND CONDITIONS

1.a.    Hyundai agrees to pay to the United States $28,818,814 ("FCA Settlement Amount"), of which $13,266,973 is restitution, by electronic funds transfer no later than thirteen (13) business days after the Effective Date of this Agreement pursuant to written instructions to be provided by the Civil Division of the Department of Justice. Relator claims entitlement under 31 U.S.C. § 3730(d) to a share of the proceeds of this Settlement Agreement and to Relator's reasonable expenses, attorneys' fees and costs. The FCA Settlement Amount does not include the Relator's fees and costs, and Hyundai acknowledges that Relator retains all rights to recover such expenses, attorneys' fees, and costs from Hyundai pursuant to 31 U.S.C. § 3730(d).

1.b.    If Hyundai's Plea Agreement in the Criminal Action is not accepted by the Court or the Court does not enter a Final Judgment in the Civil Antitrust Action, this Agreement shall be null and void at the option of either the United States or Hyundai. If either the United States or Hyundai exercises this option, which option shall be exercised by notifying all Parties, through counsel, in writing within five (5) business days of the Court's decision, the Parties will not object and this Agreement will be rescinded and the FCA Settlement Amount shall be returned to Hyundai. If this Agreement is rescinded, Hyundai will not plead, argue or otherwise raise any defenses under the theories of

3

statute of limitations, laches, estoppel or similar theories, to any civil or administrative

claims, actions or proceedings arising from the Covered Conduct that are brought by the

United States within ninety (90) calendar days of rescission, except to the extent such

defenses were available on the day on which Relator's *qui tam* complaint in the Civil

FCA Action was filed.

2. Subject to the exceptions in Paragraph 4 (concerning excluded claims) below, and

conditioned upon Hyundai's full payment of the FCA Settlement Amount, the

United States releases Hyundai together with its current and former parent

corporations; direct and indirect subsidiaries; brother or sister corporations;

divisions; current or former corporate owners; and the corporate successors and

assigns of any of them from any civil or administrative monetary claim the United

States has for the Covered Conduct under the False Claims Act, 31 U.S.C. §§

3729-3733; the Program Fraud Civil Remedies Act, 31 U.S.C. §§ 3801-3812;

Contract Disputes Act, 41 U.S.C. §§ 7101-7109; or the common law theories of

breach of contract, payment by mistake, unjust enrichment, and fraud.

3. Except as set forth in Paragraph 1 (concerning Relator's claims under 31

U.S.C. § 3730(d)), and conditioned upon Hyundai's full payment of the FCA Settlement

Amount, Relator, for himself and for his heirs, successors, attorneys, agents, and assigns,

releases Hyundai together with its current and former parent corporations; direct and

indirect subsidiaries; brother or sister corporations; divisions; current or former corporate

owners; the corporate successors and assigns of any of them as well as Hyundai owners,

directors, officers, agents, employees and counsel from (a) any civil monetary claim the

4

Relator has or may have for the claims set forth in the Civil FCA Action, the Civil

Antitrust Action, the Criminal Action, and the Covered Conduct under the False Claims

Act, 31 U.S.C. §§ 3729-3733, up until the date of this Agreement; and (b) all liability,

claims, demands, actions, or causes of action whatsoever, whether known or unknown,

fixed or contingent, in law or in equity, in contract or in tort, under any federal, state, or

Korean statute, law, regulation or doctrine, that Relator, his heirs, successors, attorneys,

agents, and assigns otherwise has brought or would have standing to bring as of the date

of this Agreement, including any liability to Relator arising from or relating to the claims

Relator asserted or could have asserted in the Civil FCA Action, up until the date of this

Agreement.  Relator represents he does not know of any conduct by Hyundai or any

current or former owners, officers, directors, trustees, shareholders, employees,

executives, agents, or affiliates that would constitute a violation of the False Claims Act

other than the claims set forth in the Civil FCA Action and the Covered Conduct, and

Relator acknowledges and agrees that his representations are a material inducement to

Hyundai's willingness to enter into this Agreement. Relator further represents and

warrants that he and his counsel are the exclusive owner of the rights, claims, and causes

of action herein released and none of them have previously assigned, reassigned, or

transferred or purported to assign, reassign, or transfer, through bankruptcy or by any

other means, any or any portion of any claim, demand, action, cause of action, or other

right released or discharged under this Agreement except between themselves and their

counsel.

4.      Notwithstanding the releases given in paragraphs 2 and 3 of this Agreement, or any other term of this Agreement, the following claims of the United States are specifically reserved and are not released:

     a.     Any liability arising under Title 26, U.S. Code (Internal Revenue Code);

     b.     Any criminal liability, except to the extent detailed in the Plea Agreement;

     c.     Except as explicitly stated in this Agreement, any administrative liability, including the suspension and debarment rights of any federal agency;

     d.     Any liability to the United States (or its agencies) for any conduct other than the Covered Conduct;

     e.     Any liability based upon obligations created by this Agreement;

     f.     Any liability of individuals;

     g.     Any liability for express or implied warranty claims or other claims for defective or deficient products or services, including quality of goods and services;

     h.     Any liability for failure to deliver goods or services due; and

     i.     Any liability for personal injury or property damage or for other consequential damages arising from the Covered Conduct.

5.      Relator and his heirs, successors, attorneys, agents, and assigns shall not object to this Agreement but agree and confirm that this Agreement is fair, adequate, and reasonable under all the circumstances, pursuant to 31 U.S.C. § 3730(c)(2)(B).

The determination of Relator's share, if any, of the FCA Settlement Amount pursuant to 31 U.S.C. § 3730(d) is a matter that shall be handled separately by and between the Relator and the United States, without any direct involvement or input from Hyundai. In connection with this Agreement and this Civil FCA Action, Relator, on behalf of himself and his heirs, successors, attorneys, agents, and assigns agrees that neither this

Agreement, nor any intervention by the United States in the Civil FCA Action in order to dismiss the Civil FCA Action, nor any dismissal of the Civil FCA Action, shall waive or otherwise affect the ability of the United States to contend that provisions in the False Claims Act, including 31 U.S.C. § 3730(d)(3), bar Relator from sharing in the proceeds of this Agreement, except that the United States will not contend that Relator is barred from sharing in the proceeds of this Agreement pursuant to 31 U.S.C. § 3730(e)(4). Moreover, the United States and Relator, on behalf of himself and his heirs, successors, attorneys, agents, and assigns agree that they each retain all of their rights pursuant to the False Claims Act on the issue of the share percentage, if any, that Relator should receive of any proceeds of the settlement of his claims, and that no agreements concerning Relator share have been reached to date.

6. Hyundai waives and shall not assert any defenses Hyundai may have to any criminal prosecution or administrative action relating to the Covered Conduct that may be based in whole or in part on a contention that, under the Double Jeopardy Clause in the Fifth Amendment of the Constitution, or under the Excessive Fines Clause in the Eighth Amendment of the Constitution, this Agreement bars a remedy sought in such criminal prosecution or administrative action.

7.  Hyundai fully and finally releases the United States, its agencies, officers, agents, employees, and servants, from any claims (including attorney's fees, costs, and expenses of every kind and however denominated) that Hyundai has asserted, could have asserted, or may assert in the future against the United States, its agencies, officers, agents, employees, and servants, related to the Covered Conduct and the United States' investigation and prosecution thereof.

8.  Conditioned upon Relator's agreement herein, Hyundai fully and finally releases Relator his heirs, successors, assigns, agents and attorneys (the "Relator Released Parties"), from (a) any civil monetary claim Hyundai has or may have now or in the future against the Relator Released Parties related to the claims set forth in the Civil FCA Action, the Civil Antitrust Action, the Criminal Action, and the Covered Conduct under the False Claims Act, 31 U.S.C. §§ 3729-3733, and the Relator's investigation and prosecution thereof, including attorney's fees, costs, and expenses of every kind and however denominated, up until the date of this Agreement; and (b) all liability, claims, demands, actions, or causes of action whatsoever, whether known or unknown, fixed or contingent, in law or in equity, in contract or in tort, under any federal, state, or Korean statute, law, regulation or doctrine, that Hyundai otherwise have brought or would have standing to bring as of the date of this Agreement, including any liability to Hyundai arising from or relating to claims Hyundai  asserted or could have asserted related to the Civil FCA Action, up until the date of this Agreement.  Hyundai further acknowledges and agrees that these representations are a material inducement to Relator's willingness to enter into this Agreement.

9.     a.     Unallowable Costs Defined: All costs (as defined in the Federal Acquisition Regulation, 48 C.F.R. § 31.205-47) incurred by or on behalf of Hyundai, and its present or former officers, directors, employees, shareholders, and agents in connection with:

(1)     the matters covered by this Agreement, any related plea agreement, and any related civil antitrust agreement;

(2)     the United States' audit(s) and civil and any criminal investigation(s) of the matters covered by this Agreement;

(3)     Hyundai's investigation, defense, and corrective actions undertaken in response to the United States' audit(s) and civil and any criminal investigation(s) in connection with the matters covered by this Agreement (including attorney's fees);

(4)     the negotiation and performance of this Agreement, any related plea agreement, and any related civil antitrust agreement;

(5)     the payment Hyundai makes to the United States pursuant to this Agreement and any payments that Hyundai may make to Relator, including costs and attorneys' fees,

are unallowable costs for government contracting purposes (hereinafter referred to as Unallowable Costs).

b.     Future Treatment of Unallowable Costs:  Unallowable Costs will be separately determined and accounted for by Hyundai, and Hyundai shall

not charge such Unallowable Costs directly or indirectly to any contract with the United States.

c.      Treatment of Unallowable Costs Previously Submitted for Payment: Within 90 days of the Effective Date of this Agreement, Hyundai shall identify and repay by adjustment to future claims for payment or otherwise any Unallowable Costs included in payments previously sought by Hyundai or any of its subsidiaries or affiliates from the United States.  Hyundai agrees that the United States, at a minimum, shall be entitled to recoup from Hyundai any overpayment plus applicable interest and penalties as a result of the inclusion of such Unallowable Costs on previously-submitted requests for payment.  The United States, including the Department of Justice and/or the affected agencies, reserves its rights to audit, examine, or re-examine Hyundai's books and records and to disagree with any calculations submitted by Hyundai or any of its subsidiaries or affiliates regarding any Unallowable Costs included in payments previously sought by Hyundai, or the effect of any such Unallowable Costs on the amount of such payments.

10.     Hyundai agrees to cooperate fully and truthfully with the United States in connection with the Civil FCA Action.  The Civil Division of the United States Department of Justice will use reasonable best efforts, where appropriate, to coordinate any requests for cooperation in connection with the Civil FCA Action with requests for cooperation in connection with the Plea Agreement in the Criminal Action and the Civil Antitrust Action, so as to avoid unnecessary duplication and expense.  Hyundai's ongoing, full, and truthful cooperation shall include, but not be limited to:

a.      upon request by the United States with reasonable notice,

10

producing at the offices of counsel for the United States in Washington, D.C. and not at the expense of the United States, complete and un-redacted copies of all non-privileged documents related to the Covered Conduct wherever located in Hyundai's possession, custody, or control;

b.      upon request by the United States with reasonable notice, making current Hyundai directors, officers, and employees available for interviews, consistent with the rights and privileges of such individuals, by counsel for the United States and/or their investigative agents, not at the expense of the United States, in the United States or Hong Kong, unless another place is mutually agreed upon;

c.      upon request by the United States with reasonable notice, (i) using best efforts to assist in locating former Hyundai directors, officers, and employees identified by attorneys and/or investigative agents of the United States, and (ii) using best efforts to make any such former Hyundai directors, officers, and employees available for interviews, consistent with the rights and privileges of such individuals, by counsel for the United States and/or their investigative agents, not at the expense of the United States, in the United States or Hong Kong, unless another place is mutually agreed upon; and

d.      upon request by the United States with reasonable notice, making current Hyundai directors, officers, and employees available, and using best efforts to make former Hyundai directors, officers, employees available, to testify, consistent with the rights and privileges of such individuals, fully, truthfully, and under oath, without falsely implicating any person or withholding any information, (i) at depositions in the United States, Hong Kong, or any other mutually agreed upon place, (ii) at trial in the

United States, and (iii) at any other judicial proceedings wherever located related to the Civil FCA Action.

11.     This Agreement is intended to be for the benefit of the Parties only.

12.     Upon receipt of the payment of the FCA Settlement Amount described in Paragraph 1.a. above, the Court's acceptance of Hyundai's Plea Agreement in the Criminal Action, and the Court's entry of a Final Judgment in the Civil Antitrust Action, the United States and Relator shall promptly sign and file a Joint Stipulation of Dismissal, with prejudice, of the claims filed against Hyundai in the Civil FCA Action, pursuant to Rule 41(a)(1), which dismissal shall be conditioned on the Court retaining jurisdiction over Relator's claims to a relator's share and recovery of attorneys' fees and costs pursuant to 31 U.S.C. §3730(d).

13.     Except with respect to the recovery of Relator's attorneys' fees, expenses, and costs pursuant to 31 U.S.C. §3730(d), each Party shall bear its own legal and other costs incurred in connection with this matter.  The Parties agree that Relator and Hyundai will not seek to recover from the United States any costs or fees related to the preparation and performance of this Agreement.

14.     Each party and signatory to this Agreement represents that it freely and voluntarily enters in to this Agreement without any degree of duress or compulsion.    15.     This Agreement is governed by the laws of the United States.  The exclusive jurisdiction and venue for any dispute relating to this Agreement is the United States District Court for the Southern District of Ohio. Hyundai agrees that the United States District Court for the Southern District of Ohio has jurisdiction over it for purposes of this case.  For purposes of construing

this Agreement, this Agreement shall be deemed to have been drafted by all Parties to this Agreement and shall not, therefore, be construed against any Party for that reason in any subsequent dispute.

16.     This Agreement constitutes the complete agreement between the Parties on the subject matter addressed herein.  This Agreement may not be amended except by written consent of the Parties.

17.     The undersigned counsel represent and warrant that they are fully
authorized to execute this Agreement on behalf of the persons and entities indicated
below.

18.     This Agreement may be executed in counterparts, each of which
constitutes an original and all of which constitute one and the same Agreement.

19.     This Agreement is binding on Hyundai's successors, transferees, heirs,
and assigns.

20.     This Agreement is binding on Relator's successors, transferees, heirs, and
assigns.

21.     All parties consent to the United States' disclosure of this Agreement, and
information about this Agreement, to the public, as permitted by order of the Court. This
Agreement shall not be released in un-redacted form until the Court unseals the entire
Civil FCA Action.

22.     This Agreement is effective on the date of signature of the last signatory to
the Agreement (Effective Date of this Agreement). Facsimiles of signatures shall
constitute acceptable, binding signatures for purposes of this Agreement.

THE UNITED STATES OF AMERICA

DATED: 3/14/19 BY: _Andrew Stenl_

Andrew A. Steinberg
Trial Attorney
Commercial Litigation Branch
Civil Division, U.S. Department of Justice

13

DATED: 3/14/19 BY: _____

Mark T. D'Alessandro
Civil Chief
Andrew Malek
Assistant United States Attorney
U.S. Attorney's Office for the Southern District of Ohio


### HYUNDAI OILBANK CO., LTD. - DEFENDANT


DATED: _____ BY: _____

Minsung Kim
Authorized Representative
of Hyundai Oilbank Co., Ltd.


DATED: _____ BY: _____

Gejaa Gobena
Andrew J. Lee
Kathryn M. Hellings
Hogan Lovells U.S. LLP
Counsel for Hyundai Oilbank Co., Ltd.


████████████████ RELATOR


DATED: _____ BY: _____

████████████████


DATED: _____ BY: _____

Eric Havian
Constantine Cannon LLP
Counsel for Relator


14

DATED:_____BY: _____
                                  Mark T. D'Alessandro
                                  Civil Chief
                                  Andrew Malek
                                  Assistant United States Attorney
                                  U.S. Attorney's Office for the Southern District of Ohio

HYUNDAI OILBANK CO., LTD. - DEFENDANT

DATED: _3/14/19_ BY: _Min Sung Kim_
                                  Minsung Kim
                                  Authorized Representative
                                  of Hyundai Oilbank Co., Ltd.

DATED: _3/14/19_ BY: _____
                                  Gejaa Gobena
                                  Andrew J. Lee
                                  Kathryn M. Hellings
                                  Hogan Lovells U.S. LLP
                                  Counsel for Hyundai Oilbank Co., Ltd.

████████████ RELATOR

DATED: _____ BY: _____
                              ████████████

DATED: _____ BY: _____
                                Eric Havian
                                Constantine Cannon LLP
                                Counsel for Relator

DATED:_____BY: _____
Mark T. D'Alessandro
Civil Chief
Andrew Malek
Assistant United States Attorney
U.S. Attorney's Office for the Southern District of Ohio

HYUNDAI OILBANK CO., LTD. - DEFENDANT

DATED: _____BY: _____
Minsung Kim
Authorized Representative
of Hyundai Oilbank Co., Ltd.

DATED: _____BY: _____
Gejaa Gobena
Andrew J. Lee
Kathryn M. Hellings
Hogan Lovells U.S. LLP
Counsel for Hyundai Oilbank Co., Ltd.

RELATOR

DATED: _____

DATED: 3/13/19 BY: _____
Eric Havian
Constantine Cannon LLP
Counsel for Relator

14